**Opinion issued August 30, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00176-CV

————————————

**NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, AS ASSIGNEE OF KELVIN RAY GATLIN, Appellant**

**V.**

**STATE AND COUNTY MUTUAL FIRE INSURANCE COMPANY, Appellee**

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Case No. 2006-35048**

---

## MEMORANDUM OPINION

Appellant National Fire Insurance Company of Hartford, as assignee of

Kelvin Ray Gatlin, appeals from the district court's take-nothing judgment on

various claims relating to the alleged breach of an insurance agreement. State and County Mutual argued that an owned-vehicle exclusion precluded insurance coverage, and the trial court agreed. On appeal, National Fire raises four issues challenging the applicability of the exclusion, the sufficiency of the evidence to support it, and the continued viability of its other causes of action.

We affirm.

## Background

On December 23, 2000, Kelvin Ray Gatlin ran a red light in his 1994 Ford pickup truck. He struck another vehicle belonging to Rainbow Play Systems. Gatlin had automobile insurance from State and County Mutual. Rainbow Play Systems was insured by National Fire.

State and County Mutual denied coverage to Gatlin, and National Fire filed a subrogation suit against him to recover the insurance proceeds it paid to Rainbow Play Systems. In 2003, National Fire obtained a $42,293.63 post-answer default judgment against Gatlin in statutory county court. This court affirmed that judgment on appeal. *See Gatlin v. Nat'l Fire Ins. Co. of Hartford*, No. 01-03-00845-CV, 2005 WL 497274, at *2 (Tex. App.—Houston [1st Dist.] Mar. 3, 2005, no pet.) (mem. op.). The statutory county court then signed a turnover order assigning to National Fire all of Gatlin's causes of action against State and County Mutual.

2

Acting in its capacity as the assignee of Gatlin's claims, National Fire sued State and County Mutual for breach of contract, violations of the Insurance Code, and a *Stowers* action. *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved). The trial court granted summary judgment in favor of State and County Mutual, holding that it owed no coverage to Gatlin because of the application of the owned-vehicle exclusion to the policy. This court reversed that judgment on appeal, because the summary judgment evidence did not conclusively show that Gatlin owned the 1994 Ford pickup truck at the time of the collision. *See Nat'l Fire Ins. Co. of Hartford v. State & Cnty. Mut. Fire Ins. Co.*, No. 01-07-00845-CV, 2009 WL 3248224, at *3–4 (Tex. App.—Houston [1st Dist.] Oct. 8, 2009, no pet.) (mem. op.).

On remand, the trial court conducted a bench trial. State and County Mutual offered into evidence its Texas personal auto insurance policy, which provided liability coverage generally under the following terms: "We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." The policy defined "covered person" to mean "You or any family member for the ownership, maintenance or use of any auto or trailer." However, under the exclusions section, the policy stated: "We do not provide Liability Coverage for the ownership, maintenance or use of . . . any vehicle, other than your covered auto, which is . . . owned by you . . . ." The policy

3

defined "covered auto" as any vehicle listed in the declarations of the insurance policy or any of certain types of vehicles that the insured acquired during the policy period if the insured notified the insurer within 30 days of such acquisition.

State and County Mutual also offered into evidence (1) applications for insurance and declarations pages from Gatlin's personal auto insurance policies covering periods from December 28, 1999 through June 19, 2001, none of which listed the 1994 Ford pickup truck as a vehicle "garaged" at Gatlin's address or as a covered vehicle; (2) a list of insurance adjuster's "action notes," which among other things contains the December 24, 2002 statement "REVIEWED FILE AND THIS CLAIM IS DENIED FOR NO COVERAGE THE UNLISTED VEHICLE WAS BOUGHT ON 10/29/99 BY KELVIN GATLIN AND NEVER LISTED ON THE POLICY"; and (3) copies of correspondence among the parties. Most of this evidence had been presented to the trial court previously as summary judgment evidence. But State and County Mutual also introduced other records, including documents from the Texas Department of Motor Vehicles, Vehicle Titles and Registration Division, showing that Gatlin acquired title to the 1994 Ford pickup truck in 1999 and surrendered title to it in 2003.

In addition to the documentary evidence, Jennifer Millican, who formerly worked as an adjuster for Insurance Depot, testified based on her review of the file and general knowledge about the insurance policy. She testified that Gatlin was

4

not entitled to coverage in this circumstance because he owned the truck yet never listed it as a covered auto on the declarations page of the insurance policy. She conceded that she did not adjust the claim and had no personal knowledge of the underlying facts aside from her review of the file.

After trial, the court issued written findings of fact and conclusions of law. The court found that Gatlin owned the 1994 Ford pickup truck that he was driving at the time of the collision, that the automobile insurance policy issued to Gatlin for the period from December 19, 2000 through June 19, 2001 did not list this truck, that Gatlin failed to inform State and County Mutual that he owned this truck, and that the insurance policy did not provide coverage for it. The court concluded that because there was no applicable coverage, State and County Mutual did not breach its contract, its *Stowers* duty, or any duty imposed by the Insurance Code.

The court rendered a take-nothing judgment in favor of State and County Mutual, and National Fire appealed.

I.      **Interpretation of the owned-vehicle exclusion**

In its first issue, National Fire argues that the trial court erred because the owned-vehicle exclusion does not apply, even if Gatlin owned the truck. It further argues that the exclusion, "even if applicable, only precludes liability coverage for the vehicle, not liability coverage for the person." National Fire thus contends that

5

because the policy provided coverage for damages for which any covered person may become legally responsible because of an auto accident, and because Gatlin was a covered person, it is legally irrelevant whether he was driving a vehicle he did not own or one which he owned but did not list in the declarations. National Fire further contends that the owned-vehicle exclusion in the policy pertains only to that portion of the policy that establishes coverage for a "covered auto" but does not pertain to that portion of the policy that establishes coverage for a "covered person." National Fire provides no citations to authority that would directly support its interpretation of these policy provisions. Instead, it relies on a rule of contract interpretation that requires a court interpreting an ambiguous insurance policy to adopt the interpretation that favors coverage so long as such interpretation is reasonable. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991). In addition, National Fire argues that cross-examination testimony from Jennifer Millican, a former State and County Mutual employee, supports its argument that its interpretation is reasonable. In response to a question asking, "Would it be a reasonable interpretation that the owned-vehicle exclusion only applies to borrowed coverage to the vehicle but not coverage to the person?" she responded, "Right."

Interpretation of an insurance policy is governed by well-established principles of contract construction. *Mid-Continent Cas. Co. v. Global Enercom*

6

*Mgmt., Inc.*, 323 S.W.3d 151, 154 (Tex. 2010). We review a trial court's interpretation of a contract de novo. *See In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). The primary objective is to give effect to the intent of the parties as reflected in the terms of the policy. *Mid-Continent*, 323 S.W.3d at 154; *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010). "We must read all parts of the contract together, giving effect to each word, clause, and sentence, and avoid making any provision within the policy inoperative." *Page*, 315 S.W.3d at 527 (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995)). "Indeed, courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *Beaston*, 907 S.W.2d at 433.

An insurance policy is ambiguous if, after applying the rules of contract construction, it is subject to two or more reasonable interpretations. *Page*, 315 S.W.3d at 527; *see also Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). "'Only where a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument.'" *Italian Cowboy*, 341 S.W.3d at 333–34 (quoting *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450–51 (Tex. 2008) (per curiam) (internal quotation omitted)). The mere fact that the parties

may disagree about the meaning of an insurance policy does not create an ambiguity. *Page*, 315 S.W.3d at 527. When an insurance policy is ambiguous, the court will ordinarily accept the reasonable interpretation that favors coverage, construing the policy against the insurer. *See Nat'l Union Fire Ins.*, 811 S.W.2d at 555 ("The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.").

The purpose of an exclusion in an insurance policy "is to remove from coverage an item that would otherwise have been included." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 160 (Tex. 2003) (citing *Liberty Mut. Ins. Co. v. Am. Employers Ins. Co.*, 556 S.W.2d 242, 245 (Tex. 1977)). The policy at issue in this case included a provision entitled "INSURING AGREEMENT," which expressly described the insurer's contractual obligation, undertaken subject to the terms of the policy and in exchange for the payment of premiums. It stated, "We will pay damages . . . for which any covered person becomes legally responsible because of an auto accident." The insuring agreement then defined "covered person," as used in this part of the policy, as:

1. You or any family member for the ownership, maintenance or use of any auto or trailer.

2. Any person using your covered auto.

3. For your covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or trailer, other than your covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of you or any family member for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or trailer.

Although the policy defined "covered auto," that term only limited certain categories of "covered person[s]." However, the owned-vehicle exclusion was a separate policy provision, which specifically removed from coverage a particular category of damages—those for which a covered person may become liable arising from the "ownership, maintenance or use" of any vehicle other than a covered auto owned by the named insured. The effect of these provisions is that a "covered auto" is covered when used by any person, and that the policyholder is covered when using any auto except for an owned auto that does not qualify as a "covered auto."

National Fire argues that "the policy was designed to provide liability coverage to a 'covered person,' such as Gatlin, irrespective of whatever vehicle he was driving.'" National Fire then argues that "[t]he purpose of the owned-vehicle exclusion is so that the carrier does not have to provide coverage to unnamed drivers driving unscheduled vehicles owned by the policyholder." We disagree. First, the policy provided liability coverage for unnamed drivers driving unlisted

9

vehicles, in that it defines a "covered person" to include "any family member for the ownership, maintenance or use of any auto or trailer." The policy defined "family member" as

> [A] person who is a resident of your household and related to you by blood, marriage or adoption. This definition includes a ward or foster child who is a resident of your household, and also includes your spouse even when not a resident of your household during a period of separation in contemplation of divorce.

Thus, the policy's liability provision included an "unnamed" driver if that person is a family member of the named policyholder. In addition, because the liability provision extended to "any family member for the . . . use of any auto," the policy generally covered a family member's use of an unscheduled vehicle, such as a rental car.

The policy did not cover matters described in the exclusions. National Fire contends that the policy mandated coverage for this accident, which arose from the use of a vehicle owned by Gatlin, which was not his "covered auto." The owned-vehicle exclusion specifically excepted this from coverage, by stating, "We do not provide Liability Coverage for the ownership, maintenance or use of . . . any vehicle, other than your covered auto, which is . . . owned by you . . . ." To adopt the reasoning that National Fire proffers would render the exclusion meaningless. *See Page*, 315 S.W.3d at 527. Thus, we conclude that the contract is not

10

ambiguous, we decline to adopt National Fire's interpretation, and we overrule this issue. *See id.*; *Italian Cowboy*, 341 S.W.3d at 333–34.

## II. Estoppel

In its second issue, National Fire contends that the trial court erred because State and County Mutual was contractually precluded from asserting the owned-vehicle exclusion because it did not timely provide a valid ground for denying the claim. National Fire essentially argues that State and County Mutual is estopped to assert the owned-vehicle exclusion because it failed to provide Gatlin with a decision denying coverage within 15 days of receiving the information it requested, and it failed to inform Gatlin at any time that it was denying coverage under the owned-vehicle exclusion. National Fire contends that these failures constituted material breaches of contract, the penalty for which "must be the preclusion of the subsequent exclusion claim." National Fire further asserts that performance of State and County Mutual's contractual duties to respond after an accident or loss "must be a condition precedent to its entitlement to assert the exclusion."

"A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement." *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976); *see Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 64 (Tex. App.—

11

Houston [1st Dist.] 2011, no pet.); *II Deerfield Ltd. P'ship v. Henry Bldg., Inc.*, 41 S.W.3d 259, 264 (Tex. App.—San Antonio 2001, pet. denied). Conditions precedent to an obligation to perform are those acts or events, which occur after the execution of a contract, and which must occur before there is a right to immediate performance. *Hohenberg Bros.*, 537 S.W.2d at 3; *Gulf Liquids*, 356 S.W.3d at 64. No particular words are required to create a condition precedent, but terms such as "if," "provided that," "on condition that," or some other phrase that conditions performance, "usually connote an intent for a condition rather than a promise." *Hohenberg Bros.*, 537 S.W.2d at 3; *Gulf Liquids*, 356 S.W.3d at 64. When no such limiting language is used, the determination of whether a contractual provision is condition precedent or a promise must be made from a review of the contract as a whole and from the intent of the parties. *Hohenberg Bros.*, 537 S.W.2d at 3; *Gulf Liquids*, 356 S.W.3d at 64. "However, where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result then the agreement will be interpreted as creating a covenant rather than a condition." *Hohenberg Bros.*, 537 S.W.2d at 3. "Because of their harshness and operation, conditions precedent are disfavored." *Gulf Liquids*, 356 S.W.3d at 63. When a contract does not clearly provide that a provision is a condition precedent, we will interpret the provision as creating a promise, not a condition. *Id.*

12

Here, the insurance policy required prompt notification of an accident or loss, and it required the insurer to provide timely communication with the person seeking coverage. Part E of the policy, entitled "Duties After An Accident or Loss," did not establish or negate coverage or use any kind of conditional words in regard to the existence of coverage. Nor did the owned-vehicle exclusion include any conditional language or express statement that satisfaction of the insurer's duties after an accident or loss, as delineated in Part E of the policy, is a condition precedent to asserting the applicability of an exclusion.

Moreover, "[t]he doctrine of estoppel cannot be used to create insurance coverage when none exists by the terms of the policy." *Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602–03 (Tex. 1988); *see Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 782 (Tex. 2008) ("there is no 'right' of noncoverage that is subject to being waived by the insurer"); *Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). As noted by the Supreme Court of Texas:

> Waiver and estoppel may operate to avoid a forfeiture of a policy, but they have consistently been denied operative force to change, re-write and enlarge the risks covered by a policy. In other words, waiver and estoppel cannot create a new and different contract with respect to risks covered by the policy.

*McGuire*, 744 S.W.2d at 603. Thus, we conclude that the duties of the insurer after an accident or loss as put forth in Part E of the policy are to be construed as a

promise, not a condition precedent to claiming the applicability of an exclusion. To do otherwise would contravene established precedent and lead to an absurd result. *See Hohenberg Bros.*, 537 S.W.2d at 3. We hold that State and County Mutual was not estopped or precluded from asserting the owned-vehicle exclusion. We overrule National Fire's second issue.

## III.   Sufficiency of the evidence to support the owned-vehicle exclusion

In its third issue, National Fire contends that there was insufficient evidence to support the court's finding that Gatlin owned the 1994 Ford pickup truck on December 23, 2000.

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence to support them as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In reviewing a challenge to the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). The trial court acts as fact-finder in a bench trial and is the

14

sole judge of the credibility of witnesses. *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.). We review a trial court's conclusions of law de novo, and we will uphold the conclusions if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

At trial, State and County Mutual introduced without objection records from the Texas Department of Motor Vehicles. Taken together, the documents show the chain of title of the 1994 Ford pickup truck at issue in this case, which culminated with title vesting in Gatlin after he purchased the truck at a mechanic's lien foreclosure sale. The record includes Gatlin's application for a Texas certificate of title, dated October 16, 1999. It also includes a document dated November 16, 2009, which identifies Gatlin as the owner of a 1994 Ford pickup truck, and which indicates that title was issued October 29, 1999, and that title was surrendered on April 23, 2003. A note on this document stated, "Owner surrendered auction sales receipt. Paper title." There is no indication that any other person or entity owned the 1994 Ford pickup truck when the title was surrendered on April 23, 2003.

However, National Fire contends that a "Title Application Receipt" dated October 18, 1999, contradicts the evidence that Gatlin owned the vehicle when the

15

accident occurred on December 23, 2000. The "Title Application Receipt" identified Gatlin as the owner of the truck, identified a "sticker" and "plate" number, stated "REGISTRATION CLASS: TRUCK—LESS/EQL. 1 TON," and indicated an expiration date of September 2000. It showed the fees that were assessed, including title application fee, sales tax fee, windshield sticker, county road bridge add-on fee, and child safety fund. As "ownership evidence," it showed a mechanic's lien, and it further showed how much sales tax was assessed and paid.

The evidence shows that Gatlin bought the truck in October 1999 at a mechanic's lien foreclosure sale and that he surrendered title to the vehicle on April 23, 2003. That his initial registration expired 12 months after issuance is not evidence that Gatlin ceased to own the vehicle on that date. Having considered the evidence, we conclude that the trial court's finding that Gatlin owned the 1994 Ford Ranger on the date of the collision is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Arias*, 265 S.W.3d at 468. We overrule National Fire's third issue.

## IV. Remaining causes of action

Finally, in its fourth issue, National Fire argues that the trial court erred in denying its remaining claims for violations of the Insurance Code or for breach of the *Stowers* duty because it erroneously held that there was no coverage for Gatlin

16

based on the collision. Having concluded that factually sufficient evidence supports the trial court's finding that Gatlin owned the 1994 Ford pickup truck at the time of the collision, and having rejected National Fire's argument that the owned-vehicle exclusion is ambiguous, we hold that the owned-vehicle exclusion applies in this case. Because there was no coverage in this case, National Fire's claims are not viable. *Cf. Phillips v. Bramlett*, 288 S.W.3d 876, 879 (Tex. 2009) (explaining that *Stowers* duty depends on there being coverage for third party's claim); *McDonald v. Home State Cnty. Mut. Ins. Co.*, No. 01-09-00838-CV, 2011 WL 1103116, at *4 (Tex. App.—Houston [1st Dist.] Mar. 24, 2011, pet. denied) (mem. op.) ("An insurer's statutory duty to attempt settlement is not triggered until the claimant presents the insurer with a settlement demand that is within policy limits and that an ordinarily prudent insurer would accept."). We overrule National Fire's fourth issue.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.